**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

---

**DAIVIONTAE TYRELL JOHNSON,**

**Plaintiff,**

**v.** **Case No. 25-CV-233**

**AIMEE J. MARSHALL, *et al.*,**

**Defendants.**

---

## DECISION AND ORDER

---

Plaintiff Daiviontae Tyrell Johnson, who is incarcerated and representing himself, brings this lawsuit under 42 U.S.C. § 1983. Johnson was allowed to proceed on a claim under the Eighth Amendment because the defendants were allegedly deliberately indifferent to his threats of self-harm. The defendants filed a motion for summary judgment, which is fully briefed and ready for a decision. (ECF No. 38.) The parties have consented to the jurisdiction of a magistrate judge. (ECF Nos. 4, 16.)

## FACTS

At all times relevant, Johnson was incarcerated at Waupun Correctional Institution. (ECF No. 40, ¶ 5.) Defendant Lt. Jacob Gripentrog was the first-shift line supervisor at Waupun, defendant Michael H. Bauer was a correctional officer working in the Restricted Housing Unit (RHU) at Waupun, and defendant Aimee J. Marshall was a sergeant in the RHU at Waupun. (*Id.*, ¶¶ 1-4.) Marshall, as sergeant, typically stayed in the sergeant's office on the unit. (*Id.*, ¶ 3.)

On December 7, 2023, Johnson was placed on clinical observation status in the RHU "because he wrote a correspondence threatening self-harm." (ECF No. 40, ¶ 5.) When a prisoner is on clinical observation status, correctional staff check on them every 15 minutes "to assess their wellbeing." (*Id.*, ¶ 7.) Prior to entering clinical observation status, prisoners are strip-searched and their cells are also searched. (*Id.*, ¶¶ 8-9.) They are also put on a property restriction, which limits access to materials that they could use to self-harm. (*Id.*, ¶ 10.)

Around 8:30 a.m. on December 10, 2023, Griepentrog approached Johnson to confiscate a shirt that Johnson had because it was a restricted item. (ECF No. 40, ¶ 12.) There are body camera videos of the defendants' interactions with Johnson. (ECF Nos. 41-1 through 41-5.) During that conversation, Johnson stated he wanted his vitals checked because "he felt hot and did not feel right." (*Id.*, ¶ 13.) Johnson then "agreed to give Lt. Gripentrog the contraband shirt on the condition that Lt. Gripentrog speak to Health Services about checking Johnson's vitals." (*Id.*, ¶ 14.) Gripentrog received the shirt and then went to the Health Services Unit (HSU) to speak with a nurse about Johnson's requests. (*Id.*, ¶ 15.) While a nurse is stationed in the RHU, Gripentrog walked to the HSU because the RHU nurse was not available. (*Id.*, ¶ 17.)

At approximately 9:18 a.m. Bauer checked on Johnson in his cell during an observation check. (ECF No. 40, ¶ 19.) Johnson asked for Gripentrog, explaining that he gave Gripentrog the contraband shirt. (*Id.*, ¶ 20.) Bauer stated that he had not talked to Gripentrog and was unaware of the situation with the shirt. (*Id.*) According to the video, Johnson then said, "I worked with y'all and gave you my shirt, bro, [inaudible], if

I got played I'm gonna start cutting though." (ECF No. 41-1 at 0:20-0:30.) Bauer and Johnson then discussed when Johnson gave Gripentrog the shirt, and Bauer pointed out that Johnson had just given Gripentrog the shirt. (ECF No. 40, ¶¶ 22-24.) Johnson also asked Bauer if he could call the nurse, to which Bauer responded that he needed to figure out whether Gripentrog already did. (*Id.*, ¶¶ 25-26.) Johnson asked Bauer if he would contact Health Services if Gripentrog had not done so, and Bauer said he would. (*Id.*, ¶ 27.)

About a half hour later, at approximately 9:47 a.m., Bauer returned to Johnson's cell informing him that Johnson had an appointment with the HSU the next day for his issue. (ECF No. 40, ¶ 29.) Johnson demanded that Bauer pull him out of his cell immediately to have his vitals checked and threatened to start cutting himself if Bauer did not pull him out. (*Id.*, ¶ 30.) According to the video, Johnson stated, "so whatcha all gonna do? Y'all want to deal with me cutting or just do this simple ass vitals check." (ECF No. 41-2 at 0:15-0:23.) Because Bauer had not yet spoken with Gripentrog, he told Johnson that whether to pull him out of his cell to get his vitals checked "was not up to him" and that "he did not know what Lt. Gripentrog had planned." (ECF No. 40, ¶¶ 32-33.) Johnson asked if Gripentrog was at the RHU nurse's station, and Bauer responded that Gripentrog went to the HSU. (*Id.*, ¶¶ 34-35.) Johnson asked why Gripentrog went to HSU instead of the RHU nurse's station, but then stated, "Don't worry about it. I'm gonna start cutting. Tell the Sergeant they're gonna have to pull me out. Don't worry about it. (*Id.*, ¶¶ 35-36; ECF No. 41-2 at 0:35-0:45.)

Johnson then left his cell window while Bauer tried to convince him not to cut himself. (ECF No. 40, ¶ 38.) Johnson stated, "Simple shit, bro. I asked you for simple shit, bro. [Unintelligible]. I feel hot as fuck. I don't feel right. [Unintelligible]. They're gonna have to pull me out anyway. Don't worry about it. You want to play crazy." (ECF No. 41-2 at 0:52-1:12.) Bauer then explained to Johnson that it had only been 30 minutes since Johnson asked to have his vitals checked. (ECF No. 40, ¶ 41.) Bauer also told Johnson that "he talked to Nurse Megan in the Restrictive Housing station and the comment she made about the appointment was her information." (*Id.*; ECF No. 41-2 at 1:12-1:43.) Bauer asserts that he was trying buy time for Gripentrog to return from HSU. (*Id.*) Johson responded, "ask Megan, would she rather have me cut so I can get pulled out or what? I'm gonna start right now, so I am saying, what we gonna do?" (ECF No. 40, ¶ 42; ECF No. 41-2 at 1:44-1:56.) Bauer reiterated that Johnson needed to give Gripentrog time, to which Johnson responded, "Gripentrog can't intervene with medical. I need my vitals checked bro. If you're not gonna do this bro, I'm gonna start cutting, you're going to have to pull me out." (ECF No. 40, ¶¶ 43-44; ECF No. 41-2 at 2:07-2:25.) Johnson then said, "I need my vitals checked, chest pain, overheating [inaudible] it's on your body camera, I need my vitals checked or I'll start cutting." (ECF No. 41-2 at 2:33-2:50.) Bauer responded that he would let Nurse Megan know about Johnson's chest pain and try to get someone to come check Johnson's vitals. (ECF No. 40, ¶ 46.) At approximately 9:50 a.m., Bauer left Johnson's cell to follow up with the nurse. (*Id.*)

A few minutes later, at approximately 9:54 a.m., Bauer returned to Johnson's cell and told him that he could take Johnson to get his vitals checked. (ECF No. 40, ¶ 47.)

Johnson had covered his cell window and refused to respond to Bauer. (*Id.*) Bauer told Johnson he did not understand why Johnson covered his window and was not responding, and Johnson said, "it was too late and he had already started cutting." (*Id.*, ¶¶ 48-49.) Bauer continued to try and convince Johnson to uncover his window but Johnson refused. (*Id.*, ¶ 50.) Johnson then pulled back the cell covering and Bauer assessed Johnson's well-being. (*Id.*, ¶ 51.) Bauer "does not recall seeing any visible signs of self-harm." (*Id.*) Johson asserts that, during this interaction, he showed Bauer razors multiple times. (ECF No. 52, ¶ 70.) Bauer then gave Johnson a direct order to uncover the window, but Johnson refused. (ECF No. 40, ¶ 52.) At that point, Bauer left Johnson's cell to go get a supervisor. (*Id.*, ¶ 53.) Johnson states that Bauer walked away knowing Johnson had a razor. (ECF No. 52, ¶ 53.) (*See also* ECF No. 41-3.)

At approximately 9:56 a.m., Bauer returned to Johnson's cell with Gripentrog. (ECF No. 40, ¶ 54.) For the next ten minutes, Bauer and Gripentrog attempted to get Johnson to come out of his cell and get his vitals checked. (*Id.*; ECF No. 41-4.) Gripentrog told Johnson several times that there was a nurse available to see him and that Gripentrog had done as Johnson requested. (ECF No. 40., ¶ 55.) Johnson still refused to come out of the cell, stating he was "pissed off" and that they would have to use OC spray to get him to come out. (*Id.*, ¶ 56.) Johnson further stated, "If I come out of my cell, I don't know, I don't know what I will do when I . . .I'm unstable right now. I don't know what I'll do [inaudible]." (ECF No. 41-4 at 6:00-7:15.)

When Johnson continued to state that he should be sprayed with OC spray, Gripentrog responded, "I don't just spray gas for no reason." (ECF No. 40, ¶ 57; ECF No.

41-4 at 7:15-7:30.) Gripentrog also told Johnson he did not understand why Johnson was doing this when there was a nurse ready to check his vitals, as Johnson had requested. (*Id.*) Gripentrog and Bauer continued to try to convince Johnson to leave his cell. (*Id.*, ¶¶ 58-60.) Johnson then showed Gripentrog the razor and asked him if he wanted it. (*Id.*, ¶ 61.) Gripentrog said he did and then received the razor from Johnson. (*Id.*, ¶ 62.) Gripentrog then asked Johnson if he was done cutting himself, and when Johnson said, "no", Gripentrog responded, "at least I have your razor." (*Id.*, ¶ 63.) Johnson then said that he had ten additional razors. (*Id.*, ¶ 64.) The video shows that Gripentrog clearly did not believe Johnson as demonstrated by Gripentrog's tone. (ECF No. 41-4 at 8:40-8:55.) Gripentrog asserts he did not believe Johnson because prisoners are strip-searched for contraband before being placed on observation status, and the cells are inspected, so it would be highly unlikely that Johnson really had ten additional razors. (ECF No. 40, ¶ 65.) Johnson points out that he already had a contraband shirt and one other razor. (ECF No. 52, ¶ 65.)

Gripentrog then examined Johnson's cut through the cell window and determined it was superficial and did not require medical attention. (ECF No. 40, ¶ 66.) Gripentrog left Johnson's cell front to notify the Psychological Services Unit of the incident. (*Id.*, ¶ 68.) Gripentrog states that, because Johnson did not show him any additional razors and because Johnson was not actively cutting himself, it did not warrant a cell extraction with OC gas but, instead, it was better to monitor Johnson every 15 minutes. (*Id.*, ¶ 69.)

At approximately 10:15 a.m., Bauer checked on Johnson and saw that he was at his cell door and had not cut himself further. (ECF No. 40, ¶ 71.) At approximately 10:36 a.m., Bauer again checked on Johnson and found that Johnson had cut himself again. (*Id.*, ¶ 72.) Bauer noted there was a small amount of blood smeared on Johnson's cell window. (*Id.*, ¶ 73.) At that point Johnson agreed to come out of his cell to be seen by HSU. (*Id.*, ¶ 74.) (*See Also* ECF No. 41-5.)

Johnson was evaluated by HSU staff, who dressed the cuts on his left forearm and wrist with ABD dressing pad, steri-strips, tape, and an anti-septic wound cleaner. (ECF No. 40, ¶¶ 84-85.) Johnson's cut did not require stitches. (*Id.*, ¶ 86.) HSU followed up with Johnson a few days later, and "documented that they were superficial abrasions, had scabbed over, and did not require follow-up care." (*Id.*, ¶ 92.) Johnson asserts that, because his cut needed steri-strips, and steri-strips close a cut similar to stitches, he basically received stitches. (ECF No. 52, ¶ 86.)

The defendants assert that, during this entire incident, it was clear that Johnson was planning a lawsuit. (ECF No. 40, ¶¶ 75-80. 82-83.) It is also undisputed that Marshall was in the sergeants' office and was not involved in the incident. (*Id.*, ¶ 81; ECF No. 52, ¶ 81.)

**SUMMARY JUDGMENT STANDARD**

The court shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those

under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Celotex Corp.*, 477 U.S. at 324. Evidence relied upon must be of a type that would be admissible at trial. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). To survive summary judgment a party cannot just rely on his pleadings but "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. "In short, 'summary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party.'" *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (citing *Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 994 (7th Cir. 2003)).

## ANALYSIS

At the outset, it is undisputed that Marshall was not involved in the incident involving Johnson. Section 1983 "creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation." *Hildebrant v. Ill. Dep't of Nat. Res.*, 347 F.3d 1014, 1039 (7th Cir. 2003) (quoting *Vance v. Peters*, 97 F.3d 987, 991 (7th

Cir. 1996)). Also, § 1983 makes public employees liable "for their own misdeeds but not for anyone else's." *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir.2009). As such, summary judgment is granted in Marshall's favor, and she is dismissed.

Johnson claims that the defendants violated his Eighth Amendment rights when they did not immediately extract him from his cell after he threatened self-harm. The Eighth Amendment "protects prisoners from prison conditions that cause 'the wanton and unnecessary infliction of pain.'" *Pyles v. Fahim*, 771 F.3d 403, 408 (7th Cir. 2014) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). "A § 1983 claim based upon a violation of the Eighth Amendment has both an objective and subjective element: (1) the harm that befell the prisoner must be objectively, sufficiently serious and a substantial risk to his or her health or safety, and (2) the individual defendants were deliberately indifferent to the substantial risk to the prisoner's health and safety." *Collins v. Seeman*, 462 F.3d 757, 760 (7th Cir. 2006). In instances of self-harm or suicide, a plaintiff must allege that prison staff knew of a significant likelihood that he would imminently harm himself and then failed to take reasonable steps to prevent the attempt. *Davis-Clair v. Turck*, 714 Fed App'x 605, 606 (7th Cir. 2018).

While the parties dispute whether Johnson faced an objectively serious risk, the court need not reach that question because no reasonable factfinder could conclude that Gripentrog or Bauer acted with deliberate indifference. Johnson argues there were two separate instances where Gripentrog and Bauer ignored his threats of self-harm. First was the exchange between Bauer and eventually Gripentrog regarding a nurse checking Johnson's vitals. "An official who responds reasonably to a risk of harm is not

deliberately indifferent to it even if the official fails to avert the harm." *Davis-Clair*, 714 Fed App'x at 607. It is undisputed and clear from the video that Gripentrog and Bauer were sincerely attempting to meet Johnson's demands to prevent Bauer from cutting himself, and in fact successfully found a nurse to check Johnson's vitals within a half-hour. For whatever reason, Johnson found this response insufficient and proceeded to cut himself anyway. This is similar to the situation described in *Bowers v. Pollard*, 602 F. Supp. 2d 977, 993 (E.D. Wis. Mar. 17, 2009), where the "defendants were left with the almost impossible task of trying to protect a man from himself." The plaintiff created a situation where "prison staff was unable to rescue the hostage" because "the threatened hostage was the same person as the threatening perpetrator." *Id.* Gripentrog and Bauer were complying with Johnson's request. They had no reason to believe that he would imminently harm himself because they were complying with his demands. They cannot be held liable for Johnson's unreasonable and manipulative behavior.

Johnson also argues that Gripentrog and Bauer violated his rights because they did not extract him from his cell despite knowing he had more razors. The defendants argue that they reasonably did not believe Johnson when he said he had more razors. "[P]rison guards are neither required nor expected to believe everything inmates tell them." *Olson v. Morgan*, 750 F.3d 708, 713 (7th Cir. 2014). "A guard who reasonably disbelieves a prisoner's assertion is not liable just because it turns out to have been true." *Horshaw v. Casper*, 910 F.3d 1027, 1029 (7th Cir. 2018). It is clear from the video, which demonstrates Gripentrog's tone, that Gripentrog did not believe Johnson when he said he had more razors. (ECF No. 41-4 at 8:40-8:55.) Gripentrog's belief was

reasonable because Johnson was on observation status and, to Gripentrog's and Bauer's knowledge, Johnson should have been strip-searched, his cell should have been searched, and all contraband should have been confiscated. Nothing in the record suggests that the defendants knew whether or not these preventative measures had occurred. Moreover, Johnson had only superficially cut himself was not making any additional threats of self-harm, so no reasonable factfinder could conclude that Gripentrog and Bauer knew of any imminent risk.

Even if a reasonable factfinder could conclude that Gripentrog and Bauer were deliberately indifferent, Johnson fails to provide evidence that he suffered a recoverable injury. "[T]he Seventh Circuit has emphasized that, while suicide and self-harm are objectively serious risks, that risk is not compensable without evidence of injury." *Braithwaite v. Mink*, Case No. 24-cv-54-WMC, 2026 WL 114819 at *5 (W.D. Wis. Jan 15, 2026)(citing *Lisle v. Wellborn,* 933 F.3d 705, 716 (7th Cir. 2019); *Lord*, 952 F.3d at 905). Several cases within the Seventh Circuit have held that small cuts that require only bandages and ointment are not recoverable injuries. *Id. See Douglas v. Schwartz-Oscar*, No. 20-3489, 2021 WL 6102971, at *2 (7th Cir. Dec. 22, 2021) (physical injuries from self-harming that consisted of minor cuts and scratches treatable with band-aids and cream not cognizable harms under the Eighth Amendment); *Keith,* 2025 WL 370115, at *11 (plaintiff's self-inflicted cuts that did not deeply penetrate skin and required only ointment to treat were not sufficient serious injuries); *Artis v. Price*, No. 19-cv-303-wmc, 2021 WL 4086208, at *5-*6 (W.D. Wis. Sept. 8, 2021) (three pea-sized skin tears to self-harming inmate's forearm that required some cleaning, a band-aid and

no follow-up care were not cognizable harm under the Eighth Amendment); *Davis v. Gee*, No. 14-cv-617-WMC, 2017 WL 2880869, at *6 (W.D. Wis. July 6, 2017) (plaintiff's swallowing a "handful of Tylenol pills," which caused no significant symptoms and required no treatment, not sufficient to sustain Eighth Amendment claim).

Johnson's cuts were treated with steri-strips and bandages. Although Johnson argues that steri-strips are similar to stitches, he offers no additional evidence outside of his own opinion that steri-strips signify a recoverable injury. The fact that there was no follow-up care required also demonstrates that Johnson did not suffer a recoverable injury.

Because no reasonable factfinder could conclude that Bauer and Gripentrog were deliberately indifferent to Johnson's threats of self-harm, and because Johnson did not suffer a recoverable injury, summary judgment is granted in Bauer and Gripentrog's favor.

## CONCLUSION

For the foregoing reasons, the defendants' motion for summary judgment is granted. The defendants also argued that they were entitled to qualified immunity but, because the court finds in their favor on the merits, it does not need to address the qualified immunity argument. Because there are no remaining claims, the case is dismissed.

## ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that the defendants' motion for summary judgment (ECF No. 38) is **GRANTED.**

**IT IS FURTHER ORDERED** that this case is **DISMISSED**. The Clerk of Court will enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. *See* Federal Rules of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2).

A party is expected to closely review all applicable rules and determine what, if any, further action is appropriate in a case.

Dated at Milwaukee, Wisconsin this 16th day of October, 2026.

BY THE COURT

WILLIAM E. DUFFIN
United States Magistrate Judge